KITSELMAN et al. v. KOKOMO FENCE-MACH. CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   April 9, 1901.)

No. 647.

1. PATENTS—ANTICIPATION—WIRE-FENCE MACHINES.
   The Davisson patent, No. 289,507, for a machine for making wire fabric, was not anticipated, but the machine described is a distinct advance over those of the prior art.

2. SAME—CONSTRUCTION—PRIMARY INVENTION.
   The Kitselman patent, No. 356,322, for a wire-fabric machine, was not anticipated, and is valid. While the machine described embodies some of the features of the prior Davisson patent, it makes changes in the mechanism which, while simple in themselves, were highly important in the general result, which was to transform a stationary or loom machine into a form which rendered it portable and capable of being successfully used in the field for the weaving of wire fence in situ; and, being the first to accomplish that result, the invention was of a primary character, and the patent is entitled to a liberal construction. As so construed, claims 1, 2, 11, and 15 are infringed by machines made in accordance with the Whitney patent, No. 552,025.

Woods, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Indiana.

In the suit below the appellants alleged infringement of four patents, under which they are manufacturing a machine for weaving wire fence in situ. These are, Letters Patent No. 289,507, granted W. J. Davisson, December 4, 1883, and later assigned to appellants; Letters Patent No. 356,322, granted A. L. Kitselman, one of the appellants, January 18, 1887; Letters Patent No. 357,067, granted T. M. Connor, February 1. 1887, and subsequently assigned to appellants; and Letters Patent No. 505,607, granted appellants as assignees of John C. Pope, September 26, 1893. The particular claims charged to be infringed are the second and third of the Davisson patent; the first, second, ninth, tenth, eleventh. fifteenth and twentieth of the Kitselman patent; the second and third of the Connor patent; and the first, ninth and tenth of the Pope patent.

Figures 1 and 2 of the Davisson patent—one of the four in suit, and referred to in the opinion—will serve to show the twisting spindles and wire-reels in position for operation; Figure 6 is an enlarged sectional view of the twisting-spindles; and Figure 10 a vertical section of a reel-case and a wire-reel in position thereon. They are as follows:

Fig. 1.

Fig. 2

Fig. 6

Fig. 10

The specifications of the Davisson patent are as follows:

"A series of hollow vertical spindles, A A, having their ends journaled in vertical sliding bearings B B, are mounted on a suitable main frame, C C. Each of said spindles is provided at its upper end with a cogged pinion, a, which is provided with a projecting cylindrical hub having a bearing in a plate, b, secured to frame C. Pinions a are each provided with a square central perforation, and the upper end of each of the spindles is squared and fitted to slide freely through said perforation, the purpose being to revolve the spindle by means of the pinion, and to allow a vertical movement of the spindle through the pinion. Each spindle A is given an intermittent reciprocating motion by means of a cam, D. mounted on the driving-shaft, E. and a lever, F, pivoted at one end to a rod, c, extending across from one side of the main frame to the other, and connected at the free end with the sliding bearing B by means of a short link, d. A friction-roller, e, is adjustably secured to lever F over cam D, there being a cam and a lever for each spindle. Cams D are placed alternately on the driving-shaft. with their flat faces on opposite sides of the shaft and their high portions overlapping, so that at each half-revolution of the driving-shaft each alternate spindle is raised, as seen in Fig. 1; but on account of the overlapping of the high portions of the cams there are two points in each revolution where the spindles are all at their highest point at the same time, for a purpose hereinafter explained. Across the top of each spindle is secured a square cross-bar, f.

"G G G G are cylindrical cases formed of sheet metal, having a central hub, g, which has a square central hole which fits over, and is adapted to slide upon the cross-bars f. The cases G are open on one side, and each carries within it a reel, H, which is adapted to turn on hub g. The wire for forming the meshes of the fabric is wound upon said reels, and they are prevented from slipping off the hub by turn-buttons h h, all as clearly shown in Fig. 10.

"For the purpose of preventing the wire-reels and their cases from being thrown off from the ends of cross-bars f, a narrow bar, i, having upturned ends j j. Fig. 6, is placed in a groove in the top edge of cross-bars f, said groove being of such depth that the upturned ends of bar i may be drawn down flush with the top surface of f. Said cross-bar f is centrally secured to the upper end of a tube, I, which slides in spindle A. The interior of spindle A is enlarged at the top to receive a spiral spring, k, which surrounds tube I and forces the upturned ends of bar i above the surface of f. A pin, l, fastened to the exterior of tube I, projects through a slot in the side of the spindle and stops the upward movement of the tube and the bar i.

"J is a rack-bar engaging pinions a a, and adapted to slide forward and backward endwise, and to revolve said pinions and their respective spindles alternately in opposite directions. Rack-bar J is reciprocated by means of a grooved cam. m, on one side of the driving-wheel, (shown clearly in Fig. 5,) a lever, L, pivoted to the main frame at n, and having a pin projecting into grooved cam m, a bell-crank, M, to the short arm of which the free end of lever L is connected, and a rod, N, pivoted to the end of the rack-bar and adjustably connected to the long arm of lever M.

"O O are shipper-bars for shifting the wire-reels from one set of spindles to another. Said bars are pivoted at their ends to cross-heads o o, and said cross-heads are rigidly secured at their centers to two upright shafts, p r, which shafts are raised twice in each revolution of the driving-shaft by means of cams s and t, secured on the driving-shaft, and levers u and v, pivoted at one end to the rod e, and connected at the other end with shafts p and r. Shaft r, after being raised, is given a partial revolution by means of cam-shaped projections w w on the side of cam t. Fig. 2. Said projections engage alternately pins x y on a lever, z, the opposite end of which is forked, and engages a rod, 1. secured to shaft r by means of two short arms, 2 and 3.

"P P are reels carrying the wires for forming the edges of the fabric. 45 are guides for said wires.

"For the purpose of holding spindles A in position, I secure upon each spindle a dog, 6, and provide a catch-plate, R, which plate is provided with notches 7, adapted to fit over said dogs. Said plate is attached to short arms 8, 9, which are pivoted to brackets attached to the main frame. Arm 9 is extended outward beyond its pivot, and is connected with lever v by a rod, 10 the effect being, when said lever is raised, to throw plate R downward and engage the dogs on the spindles.

"For the purpose of taking up the finished fabric, rolls S T are mounted on shafts journaled in the main frame. The bearings of roll T are movable, and the surfaces of the rolls are held in close contact with the fabric by means of a spring, 11, at each end of roll T. A reel, U, for storing the finished fabric, lies in the slotted bearings on the supports rising from the main frame. One turn of the fabric having been taken about said reel and secured thereto, the reel is thereafter revolved by frictional contact with roll T, on which it rests. Roll S is revolved intermittently by means of a ratchet-wheel, 12, secured to its shaft, a pawl, 13, and a rod, 14, connected to shaft p.

"The operation of my machine is as follows: The wire from reels P P is carried upward through the outside spindles, A A; or, if a narrower fabric is desired, it may be carried through either of the other spindles, and four of the incased reels carrying wire for forming the meshes are placed on alternate spindles, as shown in Fig. 1. The wire is led from each of these reels through an opening in the case, and all of the wires are passed between take-up rolls S T and passed once around reel H, and there secured. Power is now applied to the driving-shaft E, and as it revolves rack J is thrown forward and the spindles A are revolved, making two complete revolutions, and thereby twisting together the wires on the opposite ends of the cross-bar f on the central spindle and passing the wires on the cross-bars of the outside spindles around the straight wires from reels P P. When these revolutions have been accomplished, the intermediate spindles carrying no reels have been raised by their respective cams D and levers F to the level of the spindles carrying the wires, and catch-plate R has engaged dogs 6, at the same time depressing bars i by striking pins 1 downward. At the same time the shafts p r have been raised by cams s t and levers u v, carrying upward the shipper-bars O O till they are level with the cross-bars f, which are now all in line, and the forks of the shipper-bars embrace between them the reelcases G. The cam projection w on one end of cam t now passes between pins x y, engaging y, and lever z, being thereby vibrated and engaging rod 1, partially revolves shaft r, by this means moving the shipper-bars O O endwise, and thereby shifting the cases G and their reels to the intermediate cross-bars, f, which before carried no reels. The spindles first carrying the reels now fall, and those now carrying the reels are revolved by the return of rack J to its first position and a new series of meshes formed. At each upward movement of the upright shaft p pawl 13 engages ratchet-wheel 12, and the finished fabric is drawn upward and wound upon reel U.

"When short sections of fabric are to be made—as for gates—straight rods may be substituted for the side wires, and the expansible reel removed."

The claims of the above patent relied upon as infringed are the second and third, and appear below:

"2. In a machine for making wire fabric, a series of spindles arranged in a line and mounted in bearings on a suitable supporting-frame, and having on each spindle a cross-head carrying reels for wire on opposite sides of the axis of said spindle, substantially as specified.

"3. In a machine for making wire fabric, two or more hollow spindles adapted to admit the passage through their axis of wires forming the edges of the fabric, and having on each spindle a cross-head carrying reels for wire on opposite sides of the axis of said spindle, substantially as specified."

The pertinent drawings and specifications of the Kitselman patent are as follows:

Fig. 3.

"Referring to the drawings, in which like letters of reference denote corresponding parts in all the figures, A designates the main frame or casing of my improved wire-fabric machine.

"When the apparatus is to be constructed in portable form, so that it is adapted for use in the open field, road, or other place for putting up or constructing fences as the fabric is turned out or manufactured by the same, the carrying-frame A comprises the vertical standards or uprights a a and a', which are arranged parallel with each other and connected and braced by suitable cross or transverse pieces, a²; but the shape of this frame is immaterial, and I would have it understood that I hold myself at liberty to vary and change the same as may be desired.

"When the machine is to be transported and used in the open field, it is mounted upon supporting rollers or wheels B and B', which are arranged in pairs at the front and rear ends thereof, respectively. The front rollers or wheels, B, are provided with smooth or plane peripheries and travel on the smooth surface of a board or other suitable track, B³, that is placed on the ground or other place, and the rollers B' are provided with teeth on their peripheries, as clearly shown in the drawings, the said toothed wheels meshing with the racks b, that are arranged at the sides of the board or track B³ and rigidly affixed or secured thereto in any suitable manner. The toothed wheels mesh with the toothed surface of the track, so that when they are rotated by the means which I will presently describe the main frame and the various parts of the operating mechanisms will be drawn along and thus fed at the required or proper rate, and the wheels B, with the smooth peripheries, are arranged comparatively close together, so that they will bear on the track between the racks or toothed surfaces at the sides of the latter, whereby the frame is rendered very steady in its movement.

"The toothed supporting wheels are rigidly affixed in any suitable manner to a common shaft, b', so as to rotate or turn therewith, and this shaft is journaled in suitable bearings on the main frame at the lower rear side thereof. One of the ends of this shaft b' is extended beyond the sides of the vertical main frame, and to this extended end is rigidly affixed a ratchet-wheel b², with the teeth of which engages the pointed or free end of a pawl, b³, that is pivoted on and carried by a hand or operating lever, B⁴, which is provided with an eye or opening at one end, through which the shaft is passed, so that the lever is supported on the shaft and free to move thereon independently of the same. This ratchet mechanism is designed to be operated by

hand to feed the frame and other parts of the mechanism along to any required distance; but I do not intend to restrict myself to the peculiar construction and arrangement of the parts of the same, as they can be varied without departing from the spirit of my invention.

"The distance which the main frame can be moved can be easily and readily regulated or varied by the operator by causing the pawl of the hand-lever to slip over two, three, or more teeth of the ratchet-wheel, so that the mesh of the wire fabric or fence can be made of uniform size or varied as may be necessary, according to the design of fabric selected, as will be very readily understood.

"The main frame A carries a series of devices for twisting the wire into open spaces or loops, and, for the sake of clearness and convenience, in describing or referring to these devices hereinafter I will term them as 'twisters.' Any preferred or desired number of these twisting devices may be employed that may be deemed desirable or necessary, and in the accompanying drawings I have shown a series of seven, and will confine my description of the operation of the machine to this number of these devices; but I would have it understood that I hold myself at liberty to vary and change the number thereof to adapt the machine to manufacturing wire fabric of any desired width, or to constructing fences of varying or different heights. .

"In order to render the operation of my machine more clear and explicit, I have lettered these twisters C D E F G H I. The twisters from C to I, inclusive, form the active twisters, and at the top and bottom I provide two inactive twisters, I' $I^2$; and in describing the process of manufacturing the different classes or kinds of fabric I will describe the method or manner of threading the twisters, and also in which the fabric is formed. Each of these active twisters consists, essentially, of two oppositely-movable sections, J and K, and a stationary section, L, these terms being used for the purpose of distinguishing the parts of the twisters. In Fig. 7 of the drawings I have shown one of these active twisters with the parts detached from each other, and will now describe the said parts separately from each other. The oppositely-movable sections J K of each of the active twisters are made precisely or substantially alike, and they each consist of a tie or connecting bar, j, and two segmental heads, j', which are formed integral with the tie-bar and at the extremities of the latter. These segmental heads of the movable sections of the twisters are placed on opposite sides of the stationary sections of the twisters, so that the flat sides of the said segmental heads of the movable sections impinge or bear against the stationary section on their flat or straight sides, and their outer curved edges form a complete circle, whereby the stationary and movable sections of the twisters are adapted to impinge upon each other and to resolve together, so as to form the twist in the loop during the process of manufacturing the fabric.

"As before stated, each of the movable sections of each twister is cast or formed in a single piece of metal, and the segmental heads j' of the twister-sections are each provided with a transverse aperture or opening, $j^2$, except one of the movable sections of the upper and lower twisters, C I, respectively, for the free passage of the wire, as more fully described presently, and said heads are further provided with radial or outwardly-projecting arms or ribs k, which impinge or bear against the sliding frames to prevent longitudinal play of the same. These arms are also formed or cast with the twister-sections, and they are arranged to project beyond the periphery of the segmental heads, and at or near the straight inner side thereof, for the purpose described.

"The stationary or immovable section L of each twister consists of a tie or connecting bar, l, and the flat heads or ends l', formed or cast in a single piece therewith at opposite extremities of the tie or connecting bar, the heads or ends of the tie-bar being made of the same thickness or width as the bar itself, so that the sides of the tie-bar and heads thereof are in line with each other. The extremities of the heads l' of the central stationary section of each twister are extended beyond the upper and lower sides of the tie or connecting bar, as at $l^4$, so that when the said central section is rotated with the side sections of the twister to form the twist in the loop the extended ends $l^4$, will impinge upon the inner sides of the main carrying-frame, and thereby prevent the central section from longitudinal movement. The stationary sec-

tion of each twister has a cylindrical shaft or bearing-piece, $1^2$, cast in a single piece therewith, and this shaft is arranged at the rear end of the section and projects outwardly beyond one of the heads thereof, as shown. the shaft and the heads of the tie-bar being provided with passages or openings $1^3$, which are in line with each other. so that the warp-wires of the fabric or fence can pass through the said openings very freely without hinderance or danger of becoming entangled with other parts of the apparatus.

"The inactive twisters I and I' are arranged at the upper and lower ends of the main frame and on the opposite sides of the central sections of the active twisters. and said inactive twisters are merely fitted in and carried by the sliding frames to coincide with the central sections of the active twisters C I; but they do not affect the operation of the machine.

"M and N designate the sliding frames, which are arranged within the uprights a a of the main frame A and on opposite sides of the twisters. These sliding frames each consist of two vertical pieces, m, which are connected by suitable transverse pieces to render the frame rigid and strong, and which bear against the inner sides of the uprights a of the main frame. The upright a at the front of the main frame and the uprights m of each of the sliding frames are each provided with an opening or aperture, $a^3$ and m', respectively, the opening $a^3$ of the main frame being circular, and the openings m' of the sliding frames are formed on the inner edges of the sliding frames and semicircular. so that when the sliding frames coincide the said openings or recesses m' register to form a complete circle, and these openings $a^3$ in the front uprights a, of the main frame are connected by vertical slots or passages $a^4$, and a space, $m^2$, is left between the contiguous edges of the sliding frames for the stationary sections L, as will be very readily understood. The openings $a^3$ and m' of the main and sliding frames are adapted to register or coincide. and they are equal in diameter to the diameter of the circle formed by the semicircular heads or disks at the ends of the movable sections of the twisters. It will thus be seen that I provide one of the uprights of the main frame and both uprights of the sliding frames with a series of circular openings, which are connected by intermediate spaces or slots, and that these openings and slots or spaces are arranged one above the other in vertical lines. The circular openings in the said main and sliding frames correspond in number with the number of twisters employed.

"The twisters are arranged in series one above the other, and the stationary section of each of the twisters is fitted between the contiguous edges of the sliding frames and located between the movable sections of the twisters, which are thus disposed on opposite sides of the stationary section. The central stationary sections of all of the twisters are arranged in a vertical line, and they are fitted or so arranged that the heads at the extremities thereof are fitted in the straight slots or spaces $m^2$ intermediate of the semicircular openings in the contiguous edges of the vertically-sliding frames, the shaft of the stationary section of the twister being passed through and suitably journaled in the rear uprights, a and a', of the main frame, so that the stationary section of the twister is prevented from movement or play in a vertical line. The segmental heads at the extremities of the movable section of each twister are fitted so as to rotate very freely in the opening m' in the sliding frame, and the straight faces of the heads of the movable sections and the tie or connecting bars thereof are normally in contact with the head and tie-bar, respectively, of the corresponding stationary or central section of the twister, whereby all three of the sections of each of the twisters are adapted to be rotated in vertical planes together or simultaneously for the purpose of forming the twist in one of the loops of the fabric, all of the said series of twisters being geared together to adapt them to be rotated at one operation in order to twist the wires in the series of loops simultaneously.

"From the foregoing description, taken in connection with the drawings, it will be seen that the heads of each section of each twister are fitted in the opening or recess in one of the sliding frames M or N, and when these frames are moved vertically these movable sections of the twisters are carried or moved with their respective frames, so that they are caused to coincide or register with a stationary central section of a twister above or beneath the

108 F.—41

section from which the movable section started before the sliding frame was shifted. . Thus, for instance, when the sliding frame N is moved upwardly, the sections K of the twisters E and F are carried with it and caused to register with the stationary sections of the twisters D E, respectively, as will be very readily understood. The object of thus shifting or moving the sections J. K. of the twisters is to cause the wires that are fed there through to cross or incline, in order to prepare the wires for the subsequent operation of twisting them, which is accomplished by rotating the twisters one or more times, as may be desired, all as hereinafter more fully described.

"The sliding frames M N and the movable sections of the twisters carried thereby are operated or shifted vertically in opposite directions by a single movement of a singe hand-lever, O—that is, when the frame M is moved upwardly, the frame N will be forced downwardly; and vice versa. This hand-lever O is journaled or fitted near one end on a central pin or shaft, o, that is rigidly supported in the upper end of the main frame A, and the said lever is connected with the shifting or sliding frames by intermediate links, o', which are pivotally connected with the lever and the frames, as is obvious.

"Each of the shafts of the central section, L, of each twister is provided with a spur-gear wheel, p, which is rigidly secured thereto, so as to rotate therewith, and these gear-wheels are all of the same diameter and have the same number and proportion of teeth, so that all of the twisters are rotated at the same rate of speed and describe a complete circle or revolution in the same space of time. The gear-wheels mesh with each other, so that all of the twisters are rotated simultaneously, and these gear-wheels are operated at one time by a single crank, O', that is arranged at one side of the machine, and is secured on a shaft p', which is journaled in suitable bearings affixed to the upright a' of the main frame, the said shaft having a small bevel gear wheel or pinion q, which meshes with a larger bevel gear-wheel, q'. on one of the shafts of one of the stationary sections of one twister. It will be seen that by rotating the crank the motion thereof will be communicated to the shaft of one of the twisters through the bevel gear-wheel and pinion, and as all of these shafts are geared together the twisters are rotated simultaneously.

"The warp-wires that compose the fabric are passed or threaded through the central section of the twisters through the aligned openings therein, and the woof-wires of the wire fabric or fence are passed through the transverse perforations or openings in the semicircular disk or head of the movable sections of the twisters.

"The warp-wires are wound or coiled in bundles as they leave the factory, and they are unwound in rear of the machine and stretched for a suitable distance—say fifty rods—upon the posts in rear of the machine, and they serve as stays to aid in keeping the machine vertical, the said warp-wires being passed through suitable openings in the upright a', thence through the shaft of the central stationary section of the twister, then through the aligned openings therein, and out of the opposite side of the machine through the circular openings in the upright a at the front of the main frame. The woof-wires are coiled upon spools or bobbins R, that are loosely journaled in brackets r, which are affixed very rigidly to the outside of the movable side sections of the twisters by means of suitable bolts or screws, which are passed through the brackets, and the tie-bar of the movable section, each of the said movable sections of the twisters, except the inactive sections I I' and one of the movable sections of the twisters C I, being provided with a spool or bobbin, which is carried thereby and rotates therewith during the operation of twisting the wire b to form the loops. The wire from these spools or bobbins R is passed through the transverse opening in the head of the movable side sections of the twisters, and thence through the circular opening in the front upright, a, of the main frame. One of the movable sections of the twisters C and I at the extreme upper and lower ends of the machine, however, is not provided with the bobbins R for the woof-wires, because when the shifting frames M N are moved vertically one section of one twister C and the section of the twister I on the opposite side of the stationary central sections of all of the twisters will be thrown above and beneath the circular openings in the main frame, and hence it is impossible to pass or feed the woof-wires through the said

movable section of the twisters therein, and when the frames M N are shifted to one position the inactive sections I I' are adjusted to register with the stationary sections L of the twisters C I, the inactive twisters being provided merely to properly rotate the twisters C I. The warp-wires, however, are passed through the central stationary sections of the said twisters.

"In order to attain a clear understanding of the shifting of the movable side sections, J K, of the active twisters by the sliding frames M N, I shall designate the central stationary sections by the reference-letters which distinguish the twisters from each other—as, for instance, C D E, &c.—and the movable side sections of the twisters by the numerals from 1 to 12, inclusive, as clearly shown in the end elevations.

"To make the style of fence shown in Fig 1 of the drawings I proceed to thread the twisters as follows: The end twisters, C I are threaded with the large wire, which is to form the warp, by passing it through the aligned openings in the central stationary part or section thereof, and the smaller-sized wires, that form the woof of the fabric, are then passed through the twister heads 1, 4, 5, 8, 9, and 12, and it will thus be seen that no wires are passed through the twister-heads 2, 3, 6, 7, 10 and 11, and the inactive twisters I I', and the blank sections of twisters C I. When using the machine to construct a fence in the field, one end of the large wires from the central section of twisters C I is attached to the fence-post just beyond the machine. The large wires 15, which pass through the central sections of the upper and lower twisters C I, form the warp for the woven-wire netting or fabric, while the smaller wires, 16, which are inserted through the heads of the side movable sections of the twisters, form the weft or woof of the netting. The wires 15 should be stretched taut by means of suitable stretchers located any desired distance from or in rear of the machine; but I have not deemed it necessary that these stretchers shall be shown, as any device for accomplishing this end can be used. With the warp-wires 15 arranged as shown and described to form the selvage of the wire netting or fabric, and the weft or woof wires arranged through the twister-heads of the sections J K, to make the style of fence in Fig. 1, I proceed as follows: The lever O is pressed down to move the slide M downward and by the same movement force the sliding frame N upward, inasmuch as the slides move in opposite directions simultaneously. By moving the sliding frame N upward the side sections of the twisters that are located in the sliding frames are forced upward correspondingly, and the side sections J of the twisters in the sliding frame M are forced downward with the frame by the same movement of the lever. Thus the section 1 of the upper twister, C, which has one of the weft-wires 16, will be carried down and brought on a line to coincide with the central section of the twister D. By the same vertical movement of the sliding frames M N the twister-heads 5 and 9 are carried down opposite to the central section, L, of the twisters F and H, and the twister-heads 4, 8, and 12 are carried up opposite to the central sections of the twisters D. F, and H, one twister receiving one of the side sections from the adjoining twister and giving one of its own side sections to the said adjoining section. The blank inactive twisters I I' are thus caused to register with the central section, L, of twisters C I and the blank sections of twisters C I are reversed, as is obvious. In this manner the side sections, J K, which have weft-wires 16 passed through them, coincide with the twisters D, F, and H, which originally had the side sections without any weft-wires. While the machine is in this condition, with its weft-wires all located at the twisters D F H, the crank O' is turned, causing the rotating of all of the twisters simultaneously as they are geared together for instantaneous operation. The number of complete turns given to the twisters will regulate the number of twists which are made in the wires.

"As the twisters are geared together, one twister will turn in one direction and the adjacent twister will turn in the opposite or reverse direction; but at the same time each twister will make the proper twist on the two weft-wires without interfering with each other.

"It will be understood that the throw or movement of the sliding frames M N is just sufficient to cause the side sections to align or coincide with the central section of the twisters above and beneath the same, according to the

direction in which the side sections are moved by the sliding frames. In turning the twisters to make a complete twist, it is necessary to completely revolve the twisters—that is, transfer one side section from the sliding frame M to the sliding frame N, and then return it again to the frame M. This turning of the twisters is kept up to correspond with the number of twists to be made at the crossing of the wires. When the twisting is completed at this point, the sliding frames are shifted back to their original positions by properly manipulating the hand-lever, thus returning the side sections, J K, to their proper central sections. The weft-wires are now located as follows: The single weft-wires at the twisters 1 and 12 extend alongside of the warp-wires 15. The double weft-wires at the twisters 4 5 and 8 9 are arranged on each side of their respective central sections, C E, and while in this position the crank is again turned to cause the rotation of the twisters and consequent twisting of the wires at the points designated. The single end weft-wires twist around the warp-wires and the double weft-wires twist upon themselves or around each other. Having now reached the point from where the operation started, it is not necessary to continue further, since by repeating the operation over and over again the wires are inclined and twisted to form additional meshes or loops of the netting, as will be very readily understood. It will be plain that by the alternate shifting of the sliding frames M N up and down the weft-wires are extended down and up in alternate series, and thus woven together to form the mesh when the twisters are rotated."

The claims of the Kitselman patent alleged to be infringed are the following:

"1. In a wire-fabric machine, a series of sectional twisters, each of which comprises a central section for carrying a warp-wire, and having rotary movement imparted thereto, and the shifting sections for carrying the weft-wire, and receiving rotary motion from the central section to form the twist, substantially as and for the purpose herein described.

"2. In a wire-fabric machine, the combination of a series of sectional twisters geared together for simultaneous rotation, and each comprising a central portion movable only on its axis and side portions capable of a compound movement—that of rotation on their axes—and of a shifting longitudinal movement, substantially as described, for the purpose set forth."

"9. In a wire-fabric machine, the series of sectional twisters, comprising the central and side sections, the central section of each twister being geared to the twister adjacent thereto for simultaneous operation, substantially as described, for the purpose set forth.

"10. In a wire-fabric machine, the combination of a series of twisters geared directly together for simultaneous operation, and each comprising a central section and the side section, each side section carrying a spool or reel for the wire, substantially as described, for the purpose set forth.

"11. In a wire-fabric machine, a series of twisters connected for simultaneous operation, and each consisting of a central section and the side section, in combination with the spools carried by the side sections, the central section of each twister being provided with a longitudinal opening for the passage therethrough of the warp-wire, substantially as described."

"15. In a wire-fabric machine, the combination of a series of rotary twisters geared directly together for simultaneous operation, each twister having a central section capable of rotary movement only, and two side sections which are capable of a shifting movement independently of the central section in opposite directions simultaneously, whereby the said shifting sections of one twister are adjusted to register with the central sections of twisters on opposite sides of the same, substantially as described, for the purpose set forth."

"20. In a wire-fabric machine, a series of sectional twisters, each comprising a central section, the central sections being geared together to be simultaneously rotated on their axes, and the shifting side sections adapted to align with the central sections to be rotated therewith, substantially as described, for the purpose set forth."

The view we have taken of this case makes it unnecessary to set out the drawings and specifications of the Connor and Pope patents.

Appellees construct their wire fencing fabric as licensees under and pursuant to Letters Patent No. 552,025 granted W. D. Whitney December 24, 1895, the drawings and specifications of which are as follows:

Fig. 1.

Fig. 2

Fig. 5.

Fig. 3

Fig. 6.

Fig. 7.

Fig. 4.

"In the present embodiment of my invention I have shown **it applied** to a traveling frame adapted for making, in the field, fencing **having longitudinal** strands or wires, said frame embodying an upright post B **having** suitable braces B', and at its lower end supporting-wheels B2, resting **upon** a board or support C having a rib C' grooved on opposite sides, into which grooves project the inwardly-extending ends B4 of the braces B'. Passing through the post B, and at even distances apart, are tubes D, preferably extending at the front, as shown, and through these pass the longitudinal wires a b c, &c., of the fence or fabric, and upon them are loosely journaled rotary supports **for the** spool-carriers, said supports consisting, in the present instance, of intermeshing

gears E having, at the front, plates E', between which and the gears are recesses for the accommodation of the bottom plates F of the spool-carriers.

"$E^2$ indicate studs or bosses arranged in the recesses and projecting from the face of the gear, and $E^3$ are latch-pins passing into the recesses through apertures in the plates E' and pressed inward by springs $E^4$, small heads on the latch-pins limiting their inward movement. The studs and latch-pins are arranged some distance apart, as shown, the former being arranged to co-operate with the curved grooves $F^2$ in the rear side of the plate F of the spool-carrier, and the latch-pins to co-operate with the incline $F^3$ on the top of said plate and the curved slot F' in one side thereof, the groove and slot crossing, as shown, and the relations of the parts being such that the spool-carrier is held by the latch and stud on the rotary support and may be rotated with it without danger of dropping out.

"Upon the outer sides of the plates F are the spools G containing the weft or filling wire g and mounted on a spindle in a suitable yoke-frame $F^4$ having the perforated cross-bar $F^5$ through which the weft-wire passes, any suitable brake or tension device being applied to the spool to prevent movement excepting when the wire is positively drawn off. The outer plates E' of the rotary supports are preferably recessed at h for the accommodation of the standard of the spool-carrier, as shown in Fig 2.

"The gears E intermesh and are adapted to be rotated in either direction by means of bevel-pinion H mounted on a frame H' and having an attached handle or crank $H^2$, said pinion meshing with a corresponding bevel-wheel E $^x$ formed upon or attached to one of the gears E, as shown in Fig. 3.

"The devices for moving the frame B after the wires are twisted consist of a clamp embodying jaws or levers J J, pivoted to a block or support J' and adapted to grip one of the longitudinal wires of the fence or fabric, the outer ends of said jaws being connected by links $J^2$ with the end of a lever $J^3$ pivoted to the main frame at j. It will be seen that when the lever is moved in the direction indicated by the arrow in Fig. 1 the jaws J J will grip the wire and the machine will be moved, and upon moving the lever in the opposite direction the jaws will slip on the wire, the distance of movement of the frame depending on the movement of the lever, which is adjusted to the size of the mesh required.

"When making wire fabric or fence such as shown in Fig 1, the longitudinal wires are first set up and held taut, being passed through the tubular supports D. Then the filling-wires g from the spools are secured to the end post or the longitudinal wires by twisting or in any suitable manner. For the purposes of illustration I will number the supports E from the top, calling the upper one 1, the next 2, and so on, and the upper longitudinal wire a, the next b, and so on. Starting from the position shown in Fig. 2, in which the slots and grooves in the spool-carriers are engaged by the pins and studs on the supports E, the machine may be operated to twist the filling wires together and around the wires a, c e or b d f, as desired; but, assuming that the first twist is to be around the wires b d f, the supports E are rotated by the handle in the direction of the arrows, Fig. 2, and those numbered 2 4 6 will carry the spool-carriers F around, as in dotted lines, their latches $E^3$ co-operating with the sides of the slots F' and the studs $E^2$ preventing the carriers dropping out. This operation is accomplished because the slots F' in the spool-carrier plates F extend transversely of the path described by the latch-pins on the supports 2, 4 and 6 that are to move the spool-carriers, and substantially coincident with the path described by the latch-pins on the supports 1, 3 and 5 that are to rotate empty, the grooves $F^2$ being correspondingly arranged relative to the studs $E^2$ on the supports. This rotary movement is continued in the same direction as long as may be necessary to form the required number of twists around the wires b, d and f, (the weft or filling wires passing around the longitudinal wire b and d being of course twisted around each other also, while a single weft wire is passing around wire f.) During the movement in this direction, as the carriers approach the position shown in full lines in Fig. 2, the latches $E^3$ on the supports indicated by 1, 3 and 5 ride up the inclines $F^3$ on the plate F of the spool-carriers and drop into the slots F', and as long as the motion is in the direction indicated the carriers will be

rotated as described and maintained in the supports indicated by 2, 4 and 6; but when it is desired to twist the weft-wires around the longitudinal wires a c e it is only necessary to reverse the direction of movement of the supports E after said supports have completed a full revolution, after the latches have dropped into the slots F', and when the parts are in the position shown in Fig. 2 in full lines, and the operation of twisting the weft-wires around wires a c e may be understood by assuming that the supports E are rotated in the opposite direction from that indicated by the arrows. Now, as before, the latch pins E³ of the supports 1, 3 and 5, that are to move the spool-carriers, describe a path transversely of the plane of the slots F' in the carriers, and consequently move the carriers with them, while the latches E³ on the supports 2, 4 and 6 ride up the inclines on the moving carriers, drop into the slots F' and pass out as the carriers turn away from the supports. It will now be understood that the weaving of the fence can be readily accomplished by making the required number of twists around the longitudinal wires and then reversing the operating means, transferring the spool-carriers and twisting on the other wires in the opposite direction, thus dispensing with the transferring mechanisms heretofore deemed necessary and simplifying and lightening the machine.

"While the present embodiment of my invention is designed for building fences in the field, I do not wish to be confined to this arrangement, as wire netting or fabric could be readily made in quantity on large machines built for the purpose, the necessary relative movement of the fabric and machine being accomplished by moving the fence fabric instead of the machine, as herein.

"Although the spool-carriers are supported only at the lower end and at some distance from the spools themselves, it will be noted that the wires g draw from the aperture in the cross-piece F⁵ to the longitudinal strand, in the direction of the length of said cross-piece, and that while the carriers are being transferred and are rotating the end of the cross-piece is against and turns about the tubular extensions D, as seen in Figs. 1 and 2, thereby preventing the carriers from dropping out.

"If it is desired to make a fence with square or rectangular meshes, as shown in Fig. 7, it may be accomplished by this machine by removing all of the spool-carriers excepting one, and causing the supports E to make one (or more) and a half complete turns around each longitudinal wire before the motion is reversed, causing the carrier to travel down. Then move the frame back, twisting the wire around the lower wire f, as shown, and when the carrier has made one or more complete turns, reverse the motion and it will be transferred to the next support E above, if the motion is reversed when the carrier is in engagement with the support to which it is to be transferred.

"The socket or recesses in the rotary carrier-supports E and the plate F, which in the present construction is the base of the spool-carrier is but one form of co-operating parts whereby the carriers are seated upon the rotary supports, and by the terms "co-operating projections" and "recesses," used in the claims, I wish to be understood as referring broadly to a means for seating the carriers on the supports in such manner that they may be retained by the latches when the rotation is in one direction, whether the recesses be in the support E and the ends of the plate F be the projections, as shown, or vice versa.

"As far as the operation of my device is concerned, it is immaterial whether the latches are placed on the supports or gears E or upon the carrier-plates F so long as the relative movements of the latches, inclines and grooves are preserved. The slots F² and inclines F³ on opposite sides of the spool-carrier plate in connection with the spring-latches on the supports E constitute what I term a "reversed" latch connection between the parts—that is, one in which the transfer of the carrier from one support to the other is caused by the **direction of the movement of the support relative to the carrier.**"

The essential drawings and specifications of Letters Patent No. 10,743, granted John Nesmith April 4, 1854, and referred to in the opinion as most adequately representing one branch of the prior art, are as follows:

Fig.1.

Fig. 2.

"The principal and main features of novelty of my invention consist in the principle of the revolving of the wires parallel to each other at the same time they are being twisted, and the other parts and movements of my machine to produce the effects hereinafter described.

"To carry out my invention and design fully, and first to manufacture my wire-netting and wire-fence machines, it is the best plan, in my opinion, to construct the various parts of said machines of such materials as are hereinafter named. The frames should be of cast-iron, also the cams, the stands, and gearing of the same material. The levers and shippers throughout should be of wrought-iron. The jaws G G may be made of cast-iron, to which must be attached pieces of steel where the same come in contact with the wires. The netting beam or cylinder H may be made of hard wood, with iron centers, and the ratchet-gear on said cylinder may be of cast-iron. The center part of the wire-reels may be made of wood, with a sheet-iron rim on flange on each side.

"It will be readily understood by any good practical workman, by inspecting the inclosed drawings and specification, and following out the details described hereinafter, how to make, construct, and use my wire-netting machines. It is necessary to have machines for making every different size of the netting or fence—that is, for every different size of the meshes of the same—and any width of the netting less than the whole scope of the machine can be made by simply drawing in the number of wires desired, as will be understood hereinafter; and in proceeding to operate or use my netting-machines it will be seen by examining the drawings that the same are composed of two parts connected together by two shafts, as seen at P and Q, Fig. 1, and one of the said parts I call the 'twister,' the frame of which is shown at A A, Fig. 2. The other part I call the 'feeder,' the frame of which can be seen at B B, Fig. 2.

"The border-wire to netting and top and bottom wire in fence is usually larger than the wire to be twisted, although the wires can all be of the same size, if desired. The wire is placed upon the reels C C, Fig. 1, and then one end of the same is passed through a hole which is drilled in the center of the four outside gears, E E and X X, Fig. 1. The said wires are then passed to the twisting part of the machine, and through holes drilled in the centers of the two outside twisting-gears, J J, Fig. 1. Then the said wire is passed between the jaws G G, Fig. 2, and then to the cylinder H, as seen at Figs. 1 and 2, and firmly secured to the same by a clamp, g, and a catch, y, which can be seen at Figs. 1 and 2, then the wires to be twisted, which are wound upon or around the reels D D D D, Fig. 1. Said reels are then placed upon the stands I I I I, Figs. 1 and 2, on which they revolve as the wire is being drawn off from them. One end of the wire on each of the four reels D D D D is then passed through one end of the reel-stands I I I I, Fig. 1, thence to and through the slots in the twisting-gears J J J J, Fig. 1, and then they are passed between the jaws G G, Fig. 2, and thence to the cylinder H, Figs. 1 and 2, and secured to the said cylinder by the same contrivance as the border-wires, before described. The said wires being all adjusted, as above mentioned, the power is applied to the driving-pulley K, Fig. 1, which is conveyed to the shafts P and Q, Fig. 1, by means of the shafts L and gears L and M, as seen at Fig. 1. The shippers S S S S, Figs. 1 and 2, being first raised by the cams R R and U U, Fig. 2, operating against or raising the levers T T, which are shown in Fig. 2, it being understood that the shippers S S in the twisting part of my machine act in concert with and simultaneously with the shippers S S in the feeding part of my machine. By this movement they are brought into the position as shown in Fig. 2 of the drawings, and then stop moving, and as soon as the movement of the said shippers ceases the twisting-gears J J J J, Fig. 1, and the feeding-gears E E E E and X X X X, as seen at Fig. 1, make two revolutions, they revolving exactly with each other, so as to keep the wires parallel and from getting entangled with each other, two revolutions of the said gears being all the twisting that is necessary at each end of the meshes in the netting and fence for making good substantial work, although more or less twisting of the wire may be obtained, if desired, by altering the gearing in the following manner—viz., by enlarging the gear N, Fig. 1, if more than two revolutions are required of the said twisting and feeding gears, and by reducing the gear N, Fig. 1, if less than two revolutions

are wanted in the said feeding and twisting gears at each end of the meshes in the netting.

"The before-mentioned gears J J J J J and E E E E E and X X X X X, after making two revolutions, as before stated. cease moving, which is effected by a part of the teeth of the gear N, Fig. 1, being cut off from its periphery, and as the said twisting and feeding gears stop revolving in such position that the slots in the said gears are on a line with each other, so that the wires can be shipped from one set of gears to the others, by the shippers S S S S, Figs. 1, 2, and so that the wires can be shipped back from one set of gears to the others by the shippers V V V V, Figs. 1, 2, it being understood that the said feeding and twisting gears revolve and stop alternately—that is, they revolve when the shippers cease moving, and that the shippers perform their duty while the said gears remain motionless, and as the said gears stop revolving the jaws G G in the twisting part of my machine are moved backward nearly to the twisting-gears J J J J J by the cam Y and arms and connecting-pieces r, Fig. 2, and the spring b, Fig. 1, and by the peculiar construction of the upper jaw. G, and connecting-pieces r, they (the said jaws G G, Fig. 2) are brought together upon the wire and then moved forward, or toward the cylinder H, one-half the length of the meshes of the netting, as will readily be understood by inspection of the drawings, and when the wire is so drawn forward and the jaws G G stop, then the shippers S S S S, Figs. 1, 2—that is, one of the two sets of shippers on each side of the feeder-frame and one of the two sets of shippers, Fig. 1, on each side of the twisting-gears—are first raised by the cams R and U, said shippers then remaining in this position until the wire is sufficiently twisted. Then they are depressed or moved downward to their lowest position, as seen at V V V V, Fig. 2. Then the said sets of shippers V V V V, Fig. 2, on each side of the frame B and each side of the twisting-gears J J J J are moved upward by the cams R and U by the same operation as the shippers S S S S, before described, and by the upward movement of the said shippers V V V V the wires are shipped from the position in which they were left by the shippers S S S S to the other feeding and twisting gears, as will be readily understood by inspection of the drawings—that is, one set of shippers move the four inside wires one way and the other set of shippers will move the four inside wires the other way at the required time to harmonize with the other correct movements of the machine. The two outside or border wires never move transversely, but move longitudinally, like the other wires, except that they pass through holes drilled in the center of the four outside feeding-gears and the two outside twisting-gears. The two outside small wires are wound twice around the border-wires at every other twisting operation, as will be seen by inspection of Fig. 1.

"The reel-stands I I I I, Fig. 1, have each a spring on the side next the reel, the object being to produce friction and to prevent the wire from coming off the reels too easily.

"The wire for netting. fencing, &c., should be well annealed. The necessity of this will be readily understood by practical workmen. The take-up motion to the cylinder H, Figs. 1 and 2, is composed of a ratchet gear, h, Fig. 1, and cam i, Fig. 1, and lever j, Fig. 1.

"At f, Fig. 2, is shown a shaft which supports a straight-edge, over which the wires travel as they pass through the machine.

"d d, Fig. 2, are two movable planes that are moved or brought together by means of the cams l and m, Fig. 1, and levers e and n, Fig. 1, the object of the said planes being to guide the wires when they are shipped, and to hold the wires firmly while they are being twisted, so that the wires may not be sprung where they are not twisted, and at the end of each twisting operation they (the said planes d d) open or move apart, but are together, as seen at d d, Fig. 1. On the top plane, d, there are five small vertical projections—one in the front of the center of each gear. These projections are to prevent the wire from being twisted too far into the meshes.

"By inspecting the drawings it will be seen that the jaws G G are made in such shape that as they are moved backward by the cam Y and arm r, the jaws are opened, and when they are moving forward they are brought in contact with the wire by shutting together, by which operation the said wire is moved from one twisting operation to another, and so on.

"It being understood that the take-up motion acts or operates at the right, time, so as to keep the wire straight and smooth during the operation of the said machine, as hereinbefore set forth."

The Middaugh and Wilcox patent of December 23rd, 1884, is the best example of the second branch of the prior art; Figure 2 of its drawings is set out below.

The court below held that none of the appellants' patents possessed the quality of a pioneer invention; that neither appellants nor their assignors were the first to make a portable machine for weaving wire fencing fabric in the field; that both appellants and appellees were on an equal footing, both being mere improvers upon the prior art; that in this view of construction to be put upon appellants' patents appellees did not infringe; and dismissed the bill for want of equity.

R. H. Parkinson, for appellants.

Thomas A. Banning, for appellees.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

After the foregoing statement of facts, GROSSCUP, Circuit Judge, delivered the opinion of the court, as follows:

The decision of the Circuit Court turned upon the question whether the patents sued upon embodied a pioneer invention. We concur with that court in the opinion that if the invention was not of a primary character—a substantial departure from the machines of the previous art—the appellees' machine is so sufficiently differentiated from the patents sued upon that a claim of infringement can not be maintained. But if, on the other hand, appellants' patents were the first to give to the world a workable, portable machine for weaving wire fences in the field—a machine distinctly creating a new product—and aptly embody in their specifications and claims the mechanical arrangements that bring about such a result, the decree below is erroneous.

To accurately comprehend the scope and merit of the appellants' inventions it is necessary to review the preceding art. This divides

itself into two branches; that relating to loom machines, where the wire netting was made in the factory, and afterwards transferred to the field; and that relating to field machines, where the fence was constructed in situ.

The Middaugh and Wilcox machine was the most advanced of the field machines, and may be used as an illustration of the art in that direction. It was used to build a picket fence, the pickets of which were held in place by twists or weaves of parallel longitudinal wires. It employed mechanism that would give to such parallel wires the necessary twists, but did not involve a shifting, either of the wires or of the spools, such as is essential to the weaving of a diamond mesh. It did not, in fact, build a wire mesh fence, but a wooden fence, with wire supports. It thus differs from the appellants' inventions, not only in the mechanism employed, but in the product turned out. The wooden picket fence, with its wire supports, is, in no just sense, a predecessor, in kind, of the diamond mesh wire fence. Field machines of this character, therefore, must be dismissed, as not anticipatory of appellants' machines.

The two inventions in the loom machine branch of the art, most closely resembling the appellants' patents, are the Nesmith patent, and the William Smith (English) patent.

The Nesmith patent was taken out April 4, 1854, and seems to have remained unimproved upon until the Davisson patent, December 4, 1883. The patent is set out at large in the statement of facts, and there is no need, in this connection, of calling attention to the details, other than those connected with the mechanical means, generally speaking, whereby the twisting and the shifting, requisite to the weaving of the netting was brought about.

An examination of the model, drawings, and specifications shows that it contemplated but two border-wires; though intermediate stay-wires could have been provided, by the use of intermediate twisting-heads with a hollow core. Each of the twisting-heads— not only those carrying the border-wires, but the ones intermediate —had radial slots through which were carried the feeding wires, being held in tension by appropriate mechanical means. A turning of these twisting-heads carried the respective wires on their opposite sides around each other, and, at the borders, around the border-wires, thus giving the necessary twists. This having been accomplished, the twisting heads were brought into position where the slots of each were directly opposite to the corresponding slot of the other, so that, by an appropriate shifting device, the feeding-wires were carried into the opposite slots, and thus placed upon the opposite twisting-heads. It thus happened that, when the twisting-heads were again put in motion, the feeding-wires were turned in a direction opposite to that of the previous turn; and, by repeated revolutions of this kind, the diamond mesh was woven.

Two distinctive features of this patent must be borne in mind: First, that the changes of the feeding-wire, so that it would be rotated alternately in opposite directions, are brought about by the shifting of the wire, and not of the reels from which it is wound; and secondly, that there was necessitated a supplemental machine,

whose office was, by a series of opposite revolutions, to keep the wire in the rear of the twisting-heads from becoming itself twisted. These differences clearly dispose of the Nesmith patent as an anticipation.

The Smith patent is as readily disposed of. There is no proof that it ever built in the field a fence, and the description discloses nothing to differentiate it from the class of looms to which the Nesmith invention belongs; for, in speaking of the manipulation of the feeding-wires, Smith says: "I apply to the lower part of the machine feeding bobbins, supplied with the wires or cables, which pass up to the work in suitable guides, and I cut a space out of the centre of one of the halves of the twisting wheels (which are always made in two parts), so that my wires shall pass through; then when the divisions of the wheels are carried apart by the ordinary sliding bars my wires are pushed by guides out of the spaces in the wheels into slots in one of the sliding bars about midway between the turning wheels and on the opposite side of its half wheel, so that my wires may be held while the twist is made, and they are thus relieved from the action of the twisting wires which form the mesh. * * *"

An examination of the appellants' patents will show that, beginning with the Davisson patent, the twisting of the wires was effected by mechanical means entirely different from those of Nesmith or Smith. Davisson dispensed with the supplemental mechanism necessary to the Nesmith machine, and, so far as we know, to all preceding loom machines, by substituting revolving reels for the stationary ones. Instead of passing the wires through the slotted twisting-heads (which necessitated the rear untwisting mechanism) Davisson projected forward from the revolving gear wheel spindles provided with a cross-head at their working ends adapted to alternately receive and discharge the reels from which the feeding-wire was uncoiled. The revolution of these spindles, with the reels thus mounted upon them, rotated the reels in such manner as to twist the feeding-wires around each other, and around the border wires. After as many such rotations as were needed to give the requisite twists, the reels, having been brought forward to a proper position, were shifted to the cross-heads of the adjacent spindles.

The two significant features of the Davisson invention are: That the diamond mesh is made by a shifting of the reels, instead of the wires; and that the supplemental untwisting mechanism is avoided. This was a distinct advance in the improvement of loom machines. By an ingenious mechanical change,—the substitution of shifting-reels for mechanism shifting the wires—it reduced the loom machine from a complicated and bulky structure to a machine at once simple and effective.

But the Davisson machine, nevertheless, remained a loom machine. It was wholly inadaptable to use in the fields. It gave to the farmer no walking, workable diamond mesh fence maker.

What problem, then, did Kitselman, in 1887, have before him; what available material was at hand; and what did he accomplish? The most casual comparison shows, of course, that his machine—

and especially its product—is essentially different from the fence builders of the Middaugh and Wilcox design. It differs radically also from the Nesmith patent, in that interweaving is done by the shifting of the spools, instead of a clumsy shifting of the wires. Its nearest kinsman is the Davisson patent; and, although the Davisson patent is owned by the appellants, it must, for the purpose of determining the scope of the Kitselman invention, be looked upon as an anticipation.

Kitselman utilized the Davisson hollow spindle, projecting forward of the rotating-gear, with its cross-head and transferable spool-carriers thereon, for the purpose of twisting the intermeshing wire, and imbedding the longitudinal wires along the central line; but from this point he made an important departure—a departure that took the fence builder practically from its belly, as a loom machine, and set it upon its feet as a walking, working field machine. It individualizes the passing of this art from its lower antecedents to its present state of comparative ·perfection.

The mechanical changes were simple, but the results were revolutionary. The spindles of the Davisson machine were arranged vertically; had, with reference to the Davisson machine, a longitudinal movement; and were alternately forced forward and withdrawn from the plane of operation by means of a shifting device that was necessarily bulky and impracticable for field use. The Kitselman spindles were horizontally placed; had no longitudinal or lateral movement; and were confined permanently to the plane of their rotation.

In the Davisson machine, as in the Kitselman, the spindle, with its reels, acts as the twisting agent, the spindle forming the rotator; but in the Davisson machine the spindle, where the warp wire emerges from its hollow center, stands well back from the reels, thus allowing the warp wire to go unsupported to the plane of operation; while in the Kitselman machine the spindle extends clear forward to the twisting zone, to which it carries, through its hollow center, the warp wire, fully supported against side pulls. In the Davisson machine the spool-carriers are transferred to their adjacent spindles by means of an apparatus previously described as involving a longitudinal and transverse motion. Kitselman effects the transfer of his spool-carriers by shifting the one to the spindle above the spindle with which it has just operated, and the other to the spindle below. This shifting, being brought about by a longitudinal motion only, thus eliminating the necessity of a transverse motion.

In the Davisson invention a simple gear is set behind each spindle, but none of these gears engage each other, so that, when the spool-carriers are shifted to adjacent spindles and cross-heads at each successive twist, they are revolved about a practically new center. Kitselman provided each twister at its central section with a spur gear of sufficient diameter to engage the gears of the adjacent twisters, and by this means imparted a simultaneous motion to the whole series of twisters. The gear arrangement of the Davisson machine tends to twist the opposing carriers out of alignment;

subjects the central wire to certain deflection; and pulls the woof wires somewhat from their intended direction. In the Kitselman machine the pull, incident to the twisting operation, is constantly equalized, the central portions of the twisters offsetting each other in the plane in which the strain comes.

These distinctions are, to a certain extent, subsidiary, but nevertheless important. Their results entered into the general result, whereby the machine is taken from the ground, and effectively put upon its feet. The striking, effective change, however, is in the elimination from the Davisson machine of the transverse motion, (the transverse motion with reference to the Kitselman machine) and as a logical result, of the cumbrous machinery effectuating such transverse motion. The effect is as if each alternate spindle of the Davisson machine (those out of gear and standing back during the act of twisting) were eliminated, and the reels were transferred directly to and from the remaining adjacent spindles. It is this feature that gives opportunity for short spindles; that obviates the clumsy transverse adjustment; that, in short, compacts the machine within a space that permits its being set up upon its feet.

The Davisson machine could be put to no other use than that of a factory loom; it could not, in the very nature of its structure, be set up within a narrow compass. The Kitselman machine, by reason of the changes already pointed out, can be compactly mounted in a narrow vertical frame. The Davisson machine is, as we have already said, a fence builder practically on its belly, with all the clumsiness and inertness of the lower species; the Kitselman invention, for the first time, put the fence builder on its feet—an easy going, adaptable, working machine of the highest species. It built, for the first time, in the field, a wire mesh fence. It became a farm implement—an implement before unknown—as much so as the first harvester or the first stump puller. It turned over to the farmer in the field the work that had been previously done by the wire weaver in the shop. Out of it practically came a new product --a product as common now as the barbed fence, and probably much more useful.

The mechanical features distinguishing the Kitselman patent from the Davisson machine—and, of course, from all the preceding fence builders—have been indicated with sufficient precision. The first, second, eleventh, and fifteenth claims of the patent, read in connection with the drawings and description, seems to us to adequately embody them. In construing a claim the whole specification is taken together, and if the terms in which the claim is stated are consistent with those of the description, the latter with its accompanying drawings is treated as an amplification and explanation of the former, illustrating and applying its more concise and definite expressions. Rob. Pat. § 523.

Thus amplified by the description, the claims disclose a fence builder which, for the first time, employing a series of sectional twisters different from any that preceded, gears these twisters together for simultaneous rotation (a conception not involved in the Davisson patent); and brings about the necessary shifting by a

longitudinal movement, thus eliminating the Davisson transverse movement with its concomitant disadvantages—disadvantages fatal to the machine as a walking fence builder. Kitselman disclosed to the world for the first time a practical means of supplying the farmer with a highly useful fence. He has set forth these means in detail, in the descriptive portion of his patent, and has framed the claims mentioned to correctly embody them as a mechanical unity. His work is the work of a primary inventor, certainly as much so as in the cases presented in The Corn-Planter Patent, 23 Wall. 181, 23 L. Ed. 161, and The Barbed-Wire Patent, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154; and his Letters Patent are, therefore, entitled to a liberal construction.

A liberal construction, in our opinion, includes the appellees' machine. The latter is different in many features of mere mechanical structure; in the direction traversed by the spool carriers; in the attachment of the spindles; in the mounting of the pinions; in the manner of supporting the spool-carriers, and in many other particulars—set out in the opinion below and in the argument of counsel. But all these subsidiary differences still leave the appellees' machine within the underlying structural conception—the mechanical individuality—of the Kitselman invention. They are changes here and there—oftentimes to its betterment—of the details, but they do not make the appellees' machine, any the less, the direct offspring of Kitselman's thought, and its mechanical embodiment. Within this view, appellees' machine constitutes an infringement.

The decree of the Circuit Court must be reversed and the cause remanded with directions to enter a decree in accordance with this opinion.

WOODS, Circuit Judge, dissents.